EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Gustavo Salamanca Corchado<br><br>Peticionario | Certiorari<br><br>2022 TSPR 114<br><br>210 DPR ____ |

Número del Caso: CC-2020-168

Fecha: 16 de septiembre de 2022

Tribunal de Apelaciones:

Panel XII

Abogado de la parte peticionaria:

Lcdo. Harry N. Padilla Martínez

Oficina del Procurador General:

Lcdo. Fernando Figueroa Santiago
Procurador General

Lcdo. Javier O. Sepúlveda Rodríguez
Subprocurador General

Lcda. Liza M. Delgado González
Procuradora General Auxiliar

Materia: Constitucional y Procedimiento Criminal: Una orden en la que no surja la causa probable sobre el lugar en particular donde probablemente se encuentre un objeto ilegal constituye una omisión de fundamentos que activa la regla de exclusión de evidencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

           v.                 CC-2020-168      Certiorari

Gustavo Salamanca Corchado

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 16 de septiembre de 2022.

> "Judicial evaluation of probable cause by a magistrate is the essential 'checkpoint between the Government and the citizen'".[1]

En esta ocasión, y en el ámbito de la controversia que nos atañe, debemos determinar si una orden de registro y allanamiento de la cual no surja la causa probable en cuanto al lugar en particular en el que probablemente se encuentre el objeto incautable, constituye una omisión de fundamentos que activa la regla de exclusión y, por ende, cualquier evidencia admitida en un tribunal en violación a las garantías constitucionales y estatutarias será suprimida.

---

[1] <u>Malley v. Briggs</u>, 475 US 335, 352-353 (1986); <u>Steagald v. United States</u>, 451 US 204, 212 (1981).

Por los fundamentos que expondremos, contestamos en la afirmativa.

I

Como resultado de una investigación de campo realizada por la Policía, se suscitaron eventos que culminaron en el registro y allanamiento de una residencia, un automóvil y una persona, más el arresto y la eventual acusación y convicción del Sr. Gustavo Salamanca Corchado (peticionario). El 10 de abril de 2016 el agente Kevin González Vargas (agente González Vargas) recibió una confidencia telefónica de una dama que notificó que un joven apodado y conocido como "el Flaco" vendía drogas desde su automóvil marca Toyota modelo punto seis cerca de una gasolinera en el barrio Plata de Moca. En vista de lo señalado y en esa fecha, el agente González Vargas preparó una *Querella especial* y acudió al lugar para investigar.[2] Sin embargo, no observó actividad delictiva.

El 11 de abril de 2016 el agente González Vargas regresó al lugar que indicó la confidente y al no divisar transacción ilegal alguna en la zona, decidió retirarse. Ahora bien, el oficial narró que para retirarse del lugar se desvió para evadir la obstrucción vehicular que se suscitó y para ello entró a un camino rural. Mientras conducía en el camino, observó que un hombre (el peticionario) se bajó de un automóvil Honda Civic color vino, abrió el baúl del vehículo,

---

[2] *Testimonio del agente Kevin González Vargas,* Apéndice, págs. 54-59.

sacó una "pistola color negra", se la colocó en la cintura y entró a la residencia.[3]

A raíz de lo percibido, el agente González Vargas declaró que por espacio de diez minutos estuvo estacionado de manera estratégica en un área cerca de la residencia con visibilidad hacia la entrada. Transcurrido ese tiempo, narró que el peticionario salió de la residencia hacia el barrio Hato Arriba de San Sebastián y que lo persiguió hasta llegar a las parcelas Jobos en Isabela donde lo perdió de vista. Ante este hecho, el oficial regresó a la División de Drogas, Armas Ilegales y Control en Aguadilla, compartió lo que observó con el sargento Armando González Collazo (sargento González Collazo) y, luego de narrarle lo que vio, inmediatamente ambos partieron a las parcelas Jobos en Isabela.[4]

Una vez allí, pasaron por la calle Cofresí de la referida parcela, observaron el automóvil Honda Civic en una residencia y que el peticionario estaba en la marquesina de la propiedad aledaña a la de donde estaba el vehículo. En ese momento, el sargento González Collazo se percató de que en el pasado había arrestado al peticionario y le manifestó al agente González Vargas que se trataba de Gustavo Salamanca.[5]

El día 13 de abril de 2016, el agente González Vargas acudió a la residencia en Moca para investigar al

---

[3] Íd., págs. 59-65.

[4] Íd., págs. 72-74.

[5] Íd., págs. 74-75.

peticionario. Durante esa visita vio que el Honda Civic estaba en la entrada de la propiedad y, era la primera vez, que observó ropa de hombre tendida en el cordel. Luego de contarle al sargento González Collazo, este le indicó que solicitara la orden de registro y allanamiento para el peticionario, la residencia y el automóvil porque el agente González Vargas poseía los motivos fundados para la misma.[6]

Finalmente, el agente González Vargas manifestó que corroboró que, de acuerdo con la información provista y verificada, el peticionario utilizaba la residencia en Moca para guardar y traficar con armas de fuego.[7] Así, el 18 de abril de 2016 y con estos hechos en la declaración jurada, este agente solicitó las órdenes de registro y allanamiento.[8] En atención a la petición, el tribunal **expidió dos órdenes**: una para el registro del peticionario y la residencia ubicada en el barrio Plata en Moca y, la otra orden, para registrar en el vehículo Honda Civic.

El 22 de abril de 2016 el agente Aurelio Jiménez (agente Jiménez) diligenció la orden contra la residencia, en donde no encontró arma de fuego alguna, pero sí sustancias controladas, dinero y parafernalia. Asimismo, luego de las advertencias en ley, el agente Jiménez arrestó al peticionario. Una vez culminó el diligenciamiento de la

---

[6] Íd., pág. 80. *Alegato del Peticionario*, pág. 11 y *Alegato del Pueblo de Puerto Rico*, págs. 7-8.

[7] *Alegato del Peticionario*, pág. 15.

[8] *Testimonio del agente González Vargas*, Apéndice, pág. 83.

residencia y el arresto del peticionario, acudieron a la propiedad ubicada en el barrio Jobos en Isabela para registrar el vehículo, pero no se encontró el arma que motivó las órdenes de registro.

Así las cosas, el Estado acusó al peticionario por la posesión de estupefacientes para la venta y distribución de drogas según establecen los Arts. 401 y 412 de la Ley Núm. 4 de 23 de junio de 1971, conocida como "Ley de Sustancias Controladas de Puerto Rico".[9] A pesar de que el peticionario planteó la supresión de evidencia por ausencia de fundamentos para la expedición de las órdenes múltiples y luego del juicio, el Tribunal de Primera Instancia dictó *Sentencia* y halló culpable al peticionario de todos los delitos imputados.

Inconforme, el peticionario presentó un recurso de *Apelación* ante el Tribunal de Apelaciones para, en esencia, señalar que el foro de instancia erró al admitir prueba obtenida mediante una orden de registro que no contenía motivos fundados para su expedición. Consecuentemente, según argumentó, una vez se suprima la evidencia obtenida ilegalmente, el resto de la prueba incumple con el estándar de culpabilidad más allá de duda razonable y, por ende, el peticionario debía ser absuelto.

Sin embargo, el Tribunal de Apelaciones confirmó la *Sentencia* del foro primario. En síntesis, determinó que la

---

[9] 24 LPRA secs. 2401 y 2412.

solicitud de orden de registro estuvo acompañada de una declaración jurada otorgada por el agente González Vargas, quien mereció la credibilidad del tribunal *a quo*. Por tal razón, determinó que no procedía que el foro suprimiera la evidencia solicitada por el peticionario.

En desacuerdo, el peticionario acude ante esta Curia y formula los señalamientos de error que planteó en el foro apelativo intermedio respecto a la admisión de la evidencia que se obtuvo mediante una orden de registro que carecía de causa probable para su expedición y las consecuencias legales que, a su juicio, el Estado tenía que asumir. Contamos con la comparecencia de ambas partes, por lo que estamos listos para resolver.

II

## A. Protección contra registros, incautaciones y allanamientos irrazonables

Como es sabido la Cuarta Enmienda de la Constitución de Estados Unidos[10] y la Sec. 10 del Art. II de la Constitución de Puerto Rico consagran protecciones para todo individuo y sus pertenencias contra registros, incautaciones y

---

[10] Pueblo v. Rivera Surita, 202 DPR 800, 807 (2019); Pueblo v. Nieves Vives, 188 DPR 1, 11–12 (2013). Específicamente, la Cuarta Enmienda de la Constitución de Estados Unidos dispone que:

"No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá mandamiento, sino en virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado y las personas o cosas que han de ser detenidas o incautadas". Emda. IV, Const. EE. UU., LPRA, Tomo 1, ed. 2016, págs. 186–187.

allanamientos irrazonables.[11] En lo pertinente, la referida sección de nuestra Carta Magna establece:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.[12]

Ambas cláusulas son la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano".[13]

Ahora bien, con relación a la figura del juez como interposición para la expedición de una orden de registro y allanamiento, es menester apuntalar que este tiene un papel protagónico con relación a los elementos sustantivos y procesales exigidos por la garantía constitucional:

> El requisito de causa probable y la razonabilidad de la intrusión figuran como exigencias sustantivas. [E]l requisito de que la causa probable esté basada en juramento o afirmación, la exigencia de que la orden incluya una descripción detallada del lugar a ser allanado, las personas y cosas a registrarse y los objetos a ser ocupados y, en el caso de nuestro precepto constitucional, la interposición de un magistrado, responden a consideraciones de

---

[11] Pueblo v. Rivera Surita, *supra*; Pueblo v. Nieves Vives, *supra*.

[12] Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 336.

[13] Pueblo v. Nieves Vives, *supra*, pág. 12; Pueblo v. Román Mártir, 169 DPR 809, 821-822 (2007). Véase Pueblo v. Pérez Rivera, 186 DPR 845, 861-862 (2012).

índole procesal que afianzan el cumplimiento con las exigencias sustantivas.[14]

En definitiva, la autoridad judicial juega un rol conciliador en esta pugna entre el Estado y el individuo, pues el juez define e interpreta el alcance de las protecciones y garantías constitucionales. Por esto la cláusula protege tanto al sospechoso como al inocente e incluye al lugar objeto del registro sobre el cual una persona tenga una expectativa legítima de intimidad.[15] Igualmente, se extiende a los procedimientos de investigación criminal sobre el sospechoso de haber cometido un delito.[16]

Tal es la importancia que, de ordinario, se prohíbe el arresto o los registros y allanamientos sin una orden judicial apoyada en una determinación de causa probable.[17] La necesidad de una autorización judicial previa obedece a la política pública constitucional de salvaguardar la dignidad e intimidad de las personas de las actuaciones arbitrarias del Estado.[18]

---

[14] Debemos aclarar que el párrafo aludido en Pueblo v. Rolón Rodríguez, 193 DPR 166, 178 (2015) atiende las similitudes que poseen la Cuarta Enmienda de la Constitución de Estados Unidos y nuestra Carta Magna. No obstante, es incuestionable que estas similitudes están relacionadas a la labor que ejecuta el juez en cuanto a los elementos sustantivos y procesales allí consignados.

[15] Pueblo v. Camilo Meléndez, 148 DPR 539, 550 (1999). Véase, Pueblo v. Díaz, Bonano, 176 DPR 601, 612 (2009); Pueblo v. Rivera Colón, 128 DPR 672, 683 (1991); Katz v. United States, 389 U.S. 347 (1967).

[16] Pueblo v. Nieves Vives, supra; Pueblo v. Pérez Rivera, supra; O.E. Resumil, Derecho procesal penal, Oxford, Equity Pub. Co., 1990, pág. 26.

[17] Pueblo v. Nieves Vives, supra.

[18] Íd.

**B. Reglas de procedimiento criminal concernientes a la protección contra registros y allanamientos irrazonables.**

Por otro lado, en Puerto Rico, las Reglas de Procedimiento Criminal son el mecanismo mediante el cual se satisfacen las exigencias sustantivas y procesales penales que emanan de la Constitución. En el ámbito que nos ocupa, las Reglas 229 a la 234 de Procedimiento Criminal, 34 LPRA Ap. II, contienen la protección constitucional contra registros y allanamientos irrazonables y establecen requerimientos procesales adicionales que viabilizan el cumplimiento con el precepto constitucional.[19] Específicamente, la Regla 231 de Procedimiento Criminal, 34 LPRA Ap. II, establece:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche.

De lo anterior se colige que, conforme a las exigencias constitucionales y estatutarias, para la liberación de una orden judicial de registro y allanamiento se requiere:

---

[19] Pueblo v. Rolón Rodríguez, *supra*, pág. 178.

(1) una declaración bajo juramento o afirmación (2) en la que surja la causa probable; (3) que la orden sea librada por autoridad judicial; y (4) en ella se escriba el nombre o se describa con particularidad la persona o el lugar a ser registrado y las cosas o la propiedad a ocuparse.[20] Además, según la Regla 231, la orden expresará: (1) los fundamentos para expedir; (2) el nombre de la persona declarante; (3) el decreto a un funcionario público para que registre inmediatamente la persona o el lugar que la orden indique para la búsqueda específica de la propiedad, la cosa o el objeto; (4) con el mandato para que el funcionario devuelva al magistrado el diligenciamiento de la orden con la propiedad ocupada y (5) dispondrá que el diligenciamiento se ejecutará durante el día a menos que, por necesidad y urgencia, el magistrado entienda que se haga en cualquier momento del día.

## C. Causa probable para expedir una orden de registro y allanamiento

Previamente expusimos que tanto para la expedición de una orden de arresto como para la de registro y allanamiento es necesario la determinación de causa probable por autoridad judicial. Asimismo, si bien el grado de prueba para establecer el requisito de causa probable para arresto es distinto al de una orden de registro, ambos contienen el mismo objetivo: proteger al individuo contra la intervención irrazonable del Estado.

---

[20] Pueblo v. Rivera Martell, 173 DPR 601, 610 (2008); Gerstein v. Pugh, 420 US 103 (1975). Véase Pueblo v. Rolón Rodríguez, *supra*, págs. 180-81; Pueblo v. Camilo Meléndez, *supra*, pág. 553.

Una orden de arresto es expedida por un magistrado tras la demostración de causa probable para creer que el sujeto de la orden ha cometido un delito y, por lo tanto, la orden sirve principalmente para proteger a un individuo de una incautación irrazonable. En contraste, una orden de registro se expide tras la demostración de causa probable para creer que **el objeto legítimo de un registro se encuentra en un lugar particular** y, por lo tanto, salvaguarda el interés del individuo en la intimidad de su hogar y posesiones contra la intrusión injustificada de la policía.[21]

En el contexto de que la cosa objeto de una orden de registro se encuentre en un lugar en particular y la controversia que nos ocupa, debemos reseñar lo acontecido en Flores Valentín v. Tribunal Superior, 91 DPR 805 (1965). En esa oportunidad atendimos una controversia similar a la del presente caso. Luego de que tres individuos escalaran una residencia y hurtaran un arma de fuego, uno de estos declaró a la Policía que le vendió el revólver al Sr. Juan Flores Valentín. Esa deposición formó parte de las declaraciones juradas que los agentes de la Policía prestaron y, conforme a estas, un magistrado autorizó el registro de la propiedad (negocio) del señor Flores Valentín con el fin de incautar el arma de fuego.[22] Además, libró otra orden para el arresto del señor Flores Valentín.

---

[21] (Énfasis y traducción suplida). Steagald v. U.S., 451 US 204, 213 (1981). (An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.)

[22] Flores Valentín v. Tribunal Superior, 91 DPR 805, 810 (1965).

La Policía primero intervino con el señor Flores Valentín en una carretera, lo llevó al cuartel arrestado y, posteriormente, incautó el revólver objeto de la orden de registro en el vehículo que los agentes custodiaban. Acto seguido, otros miembros de la fuerza acudieron a la propiedad y ocuparon pertenencias personales y material ilegal por las cuales el Estado presentó cargos contra el señor Flores Valentín y su compañera.

Los acusados solicitaron la supresión de evidencia y argumentaron la invalidez de la incautación porque las sustancias controladas se obtuvieron luego de que la Policía ocupara el arma de fuego objeto de la orden de registro. Este Tribunal atendió los planteamientos esgrimidos por los acusados y sobre el particular resolvimos que una vez se incaute el objeto de una orden de registro y allanamiento, cualquier cosa que posteriormente se ocupe en un allanamiento constituye un registro ilegal, irrazonable, inválido e ineficaz.[23]

Sin embargo, llamamos la atención con relación al último pero más serio argumento de nulidad de la orden de

---

[23] Íd., pág. 813 y esc. 4. En específico, determinamos que el posterior allanamiento de la propiedad resultó irrazonable, ilegal e inválido porque con la ocupación del arma de fuego la orden de allanamiento quedó plenamente ejecutada y cumplida. Así, expusimos que la eficacia jurídica de la orden para proceder al registro de la propiedad se agotó desde la ocupación del revólver. Además, establecimos que el aditamento en términos generales sobre la ocupación de "cualquier otra prenda o artículo poseído en contravención de la ley" aunque no produce la nulidad integral de la orden, carece de valor legal por ser contraria a la Sec. 10 del Art. II de nuestra Constitución y consecuentemente con el ordenamiento procesal criminal de entonces. Asimismo, declaramos que el registro del vehículo resultó ilegal porque el arma se encontró en el auto que estaba en la carretera bajo la custodia de la Policía mientras el señor Flores Valentín se encontraba detenido en el cuartel.

allanamiento en *Flores Valentín*.[24] Y es que, al evaluar las declaraciones juradas que dieron base para la orden de registro y allanamiento de la propiedad en *Flores Valentín*, nos percatamos que de estas no surgía de forma alguna la causa probable para la autorización judicial expedida. En ninguna de las declaraciones juradas "se expuso o se desprende que el revólver sustraído por los [escaladores] se encontraba oculto en sitio alguno, ni mucho menos en la [propiedad registrada]".[25] Específicamente, expresamos que de las declaraciones juradas:

> [no] se puede en forma alguna deducir que ellos tuvieran la completa seguridad, ni tan siquiera la más leve o remota seguridad, de que el revólver hurtado que se buscaba se encontraba 'en el lugar que ha de ser registrado', es decir en el edificio ocupado por la familia y los negocios del acusado, ni tampoco que en los momentos en que se prestaban tales declaraciones tal revólver lo llevara encima Flores Valentín.[26]

En otras palabras, antes y al momento de prestar las declaraciones juradas por las cuales se libró la orden de registro y allanamiento de la propiedad y la de arresto, los declarantes no tenían ni remota seguridad sobre si el arma de fuego se encontraba en el lugar que iba a registrarse o dónde se realizó la venta, tampoco si el señor Flores Valentín la tenía consigo o si estaba oculta en algún lugar. De hecho, en la declaración jurada del policía "ni tan siquiera menciona el revólver o hace relación al mismo, ni al lugar donde esa

---

[24] *Flores Valentín v. Tribunal Superior*, *supra*, pág. 816.

[25] Íd.

[26] Íd., pág. 815.

prenda se encontraba o se hubiera encontrado en momento anterior alguno".[27] Esto es, los declarantes no tenían idea de en qué lugar en particular se encontraba el arma de fuego objeto de la orden judicial.

Si bien en *Flores Valentín* resolvimos la invalidez de un registro posterior una vez se incaute el objeto de una autorización de registro, realmente la orden en sí era insuficiente de su faz porque omitió los fundamentos requeridos para la expedición. Es decir, el hecho de que ni de la declaración jurada ni de la orden surgía el lugar en particular donde se encontraba el arma de fuego incidió sobre la ausencia de causa probable para la expedición de la orden.[28]

En fin, en materia de registros y allanamientos, la doctrina sobre la determinación de causa probable se examina a base de probabilidades[29] y del estándar de la persona

---

[27] Íd., pág. 816.

[28] En cuanto al arresto del Sr. Juan Flores Valentín, determinamos que era ilegal porque de la declaración no surgía de que este la hubiese comprado.

[29] Flores Valentín v. Tribunal Superior, *supra*, pág. 810; Pueblo v. Rivera, 79 DPR 742, 747 (1956). En este último caso expresamos:

> El criterio o medida para juzgar si existe causa probable no puede expresarse en términos rígidos y absolutos: la cuestión estriba en determinar si los hechos y las inferencias que se derivan de los mismos, a juicio de una persona prudente y razonable, bastan para creer que se está cometiendo o se ha cometido el delito por el cual la ley autoriza la expedición de una orden de allanamiento. *Carroll v. United States*, 267 US 132 (1925); *Steele v. United States*, 267 US 498 (1925); *Dumbra v. United States*, 268 US 435 (1925). Meras sospechas no constituyen causa probable pero tampoco es necesario que el juez quede convencido fuera de toda duda razonable de que se está violando la ley. Como indicó el Tribunal Supremo de los Estados Unidos en Brinegar v. United States, 338 US 160, 175 (1949)"Cuando nos referimos a causa probable ... actuamos a base de probabilidades. Estas no son cuestiones técnicas: se trata de consideraciones prácticas y reales que surgen en la vida cotidiana a base de las cuales actúan hombres prudentes y razonables y no técnicos en derecho. La norma o regla en

prudente y razonable.[30] Claro está, depende de las circunstancias de cada caso. Por eso, y a modo de ejemplo, en Pueblo v. Rivera, 79 DPR 742, 752 (1956), resolvimos que "al amparo del Artículo 507 del Código de Enjuiciamiento Criminal entonces vigente, se estableció que incluir fundamentos distintos a los contenidos en la declaración jurada, y que no tenían el apoyo de ningún juramento o afirmación, invalidaban la orden de allanamiento".[31] En Pueblo v. Cintrón, 80 DPR 360, 363 (1958), citando a _Rivera_, determinamos que anejar la declaración jurada a la orden no subsana el defecto de la omisión de fundamentos y si bien no era necesario transcribirlo _verbatim_, una orden de allanamiento que contenía un resumen de los fundamentos incluidos en la declaración jurada cumplía con el ordenamiento procesal criminal.[32] En Pueblo v. Rolón Rodríguez, 193 DPR 166 (2015)

---

cuanto a la prueba, por consiguiente, depende de la cuestión que debe probarse".

[30] Pueblo v. Tribunal Superior, 91 DPR 19, 25 (1964); Dumbra v. United States, 268 US 435, 441 (1925); United States v. Moriarity, 327 F.2d 345, 348 (3d Cir. 1964); People v. Fino, 199 N.E.2d 151 (1964). En Pueblo v. Tribunal Superior, _supra_, reiteramos el análisis de Pueblo v. Rivera, _supra_, y, según la normativa norteamericana, añadimos que:

> Al determinar qu[é] es causa probable no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay la causa probable que justifica la expedición de una orden.

[31] Pueblo v. Rolón Rodríguez, _supra_, pág. 179; Pueblo v. Rivera, _supra_, pág. 752.

[32] Pueblo v. Rolón Rodríguez, _supra_, pág. 180.

además de que expresamente reconocimos que el requisito de la causa probable de la Regla 231 de Procedimiento Criminal es de entronque constitucional, resolvimos que una orden de registro resultó inválida de su faz porque omitió los hechos y fundamentos que, en efecto, constaban en la declaración jurada que dieron base para su expedición.[33]

En atención a lo ocurrido en *Flores Valentín* y al presente caso, conviene revisitar Pueblo v. Camilo Meléndez, 148 DPR 539 (1999). En esa ocasión, y luego de varios años, repasamos la forma de evaluar la existencia de los motivos fundados en una declaración jurada y la causa probable en una orden de registro y allanamiento para saber si correspondía la expedición o si, por el contrario, procedía la activación de la regla de exclusión por omisión de fundamentos de una autorización judicial librada por una deposición insuficiente.

En *Camilo Meléndez* sucedió que la Policía diligenció una orden de registro y allanamiento para una estructura de ocupación múltiple. Se registraron tres apartamientos y un remolque o "vagón residencia", pero solo en este y en uno de los apartamientos se ocupó evidencia delictiva. Los afectados impugnaron la validez de la orden de registro porque la declaración jurada que dio base para la expedición no describió a cuál o a cuáles de las viviendas estaba dirigida. Luego de atender varios argumentos, consideramos como una

---

[33] En Pueblo v. Rolón Rodríguez, *supra*, además aconteció que la declaración jurada no se anejó a la orden, por lo que no se entregó al diligenciar la autorización judicial.

omisión de fundamentos el no describir la vivienda en particular que era objeto del registro, por lo que la orden resultó insuficiente de su faz con las consecuencias legales que eso acarrea.

Resolvimos lo anterior no sin antes repasar la manera de juzgar la causa probable o el motivo fundado. Como expusimos, esta se determina a base de los criterios de razonabilidad y probabilidad.[34] Primeramente, la razonabilidad se cimenta en la figura de una persona prudente y razonable que, de acuerdo con los hechos aparentes, puede creer que se ha cometido una ofensa imputable. Lo importante es que los hechos observados sean de tal naturaleza que se perciba la configuración de la causa probable necesaria para la liberación de la autorización judicial. Este criterio no debe descansar "en meras sospechas, pero tampoco requiere que el juez quede convencido, fuera de duda razonable, que se está violando la ley, ni que se establezca que la ofensa que se imputa fue verdaderamente cometida".[35] Por eso hemos expresado que "[b]asta con que el deponente entienda que se había violado la ley en el lugar que habría de ser registrado

---

[34] Pueblo v. Camilo Meléndez, *supra*, págs. 555-556; Pueblo v. Pagán, Ortiz, 130 DPR 470, 483-484 (1992); Pueblo v. Muñoz, Colón y Ocasio, 131 DPR 965, 979-980 (1992); Pueblo v. Rey Marrero, 109 DPR 739 (1980); Pueblo v. Lastra Sáez, 93 DPR 876 (1967). La jurisprudencia citada descansó en los pronunciamientos señalados en Pueblo v. Rivera, *supra*, pág. 747 citando a Brinegar v. United States, 338 US 160, 175 (1949) y Pueblo v. Tribunal Superior, *supra*, citando Dumbra v. United States, 268 US 435, 441 (1925); United States v. Moriarity, *supra*; People v. Fino, *supra*.

[35] Íd.

o allanado" para establecer el motivo fundado requerido para la expedición de una orden de registro y allanamiento.[36]

Segundo, dispusimos que el criterio de la probabilidad es un concepto esencialmente objetivo, por ende, no debe apoyarse únicamente en elementos subjetivos.[37] De manera que una vez los hechos aparentes y las circunstancias justifiquen la existencia de los motivos fundados, estos deberán exponerse en una declaración jurada.[38] En esa declaración jurada que procura la autorización judicial para registrar, los motivos fundados consisten en la probabilidad de que exista determinado objeto incautable y que este se encuentra en el lugar que ha de ser allanado.[39] Y, para la liberación de la orden judicial, la causa probable se fundamenta en que, conforme a los hechos observados y las circunstancias expuestas por el declarante, el magistrado razonablemente puede creer "que el *objeto incautable* del registro se encuentra en el *lugar particular* que habrá de ser allanado".[40]

Nótese que estos hechos estaban relacionados a la insuficiencia en la especificidad o particularidad de la descripción del lugar y cuando en *Camilo Meléndez* discutimos el contenido de una orden de este tipo -conforme lo exige el ordenamiento procesal penal-, en síntesis, expresamos que:

---

[36] Pueblo v. Camilo Meléndez, *supra*; Pueblo v. Tribunal Superior, *supra*.

[37] Pueblo v. Camilo Meléndez, *supra*, pág. 556.

[38] Íd.

[39] Íd.

[40] Íd., págs. 556-557.

> Se requiere que una persona preste una declaración jurada, ante un magistrado, en la que detalle los hechos que justifican la expedición de la orden. Antes de librar la orden, el magistrado debe quedar convencido de que de la declaración jurada y del examen del declarante surge causa probable para que se lleve a cabo el registro o el allanamiento. Una vez expedida, *ésta debe describir con particularidad o nombrar a la persona o [el] lugar que será registrado y los objetos que han de ocuparse.* Se exige, además, que la orden exprese los fundamentos que la sustentan y los nombres de las personas en cuyas declaraciones juradas se basa.[41]

Debe tenerse presente que la denominada regla jurídica de la causa probable reconoce y protege de manera paralela dos intereses. Por un lado, la exigencia concerniente a la inviolabilidad de la persona y, por el otro, la necesidad de hacer cumplir la legislación penal.[42] A su vez, la causa probable o el motivo fundado requiere que estos intereses de orden social y libertad individual se armonicen al aplicarla concretamente en cada caso.[43] Por eso, es imperativo que los fundamentos estén presentes en la declaración jurada y, por ende, en la orden. De lo contrario, según resolvimos en *Camilo Meléndez*, la omisión de fundamentos por la ausencia de particularidad tiene el efecto de invalidar el registro y, por consiguiente, activa la regla de exclusión de la Sec. 10 Art. II de la Constitución de Puerto Rico y de la Regla 231 de Procedimiento Criminal.[44]

Como se sabe, esta normativa está vigente hace años. Por ello coincidimos con la expresión realizada por la Jueza

---

[41] Íd., pág. 553. Véase Pueblo v. Rolón Rodríguez, *supra*, págs. 180-181.

[42] Flores Valentín v. Tribunal Superior, *supra*, pág. 818.

[43] Íd.

[44] Pueblo v. Rolón Rodríguez, *supra*, págs. 187-188.

Asociada señora Pabón Charneco en <u>Pueblo v. Rolón Rodríguez</u>, 193 DPR 166, 187-188 (2015) ateniente a la necesidad de reiterar a *Camilo Meléndez*, respecto a los efectos que produce la omisión de fundamentos en una orden de registro y allanamiento expedida a raíz de una declaración jurada carente de motivos fundados.

### III

En el presente caso, para ocupar un arma de fuego, el tribunal expidió dos órdenes que permitió el registro de tres lugares, a saber: la persona del peticionario, una residencia ubicada en Moca y un auto Honda Civic. Durante el diligenciamiento de la residencia se ocupó evidencia delictiva pero, el objeto de las órdenes, a saber, "la pistola negra", nunca se encontró. El Estado presentó cargos contra el peticionario por el material ilícito incautado en la residencia y la defensa solicitó infructuosamente la supresión de la evidencia.

Según el peticionario, la declaración jurada que dio base a las órdenes impugnadas incumplió con los criterios de razonabilidad y probabilidad que debe considerar el tribunal para expedirlas. A su entender, era físicamente imposible que un arma de fuego estuviera en tres lugares al mismo tiempo. De manera que esto denotaba que el agente desconocía el paradero de la "pistola negra" al momento de prestar la declaración jurada. Por lo tanto, consideró que esto constituyó una ausencia de motivos fundados y que, por ende, no podía existir la causa probable para expedir las órdenes.

En atención a lo anterior, argumenta que los foros *a quo* debieron declararlas insuficientes de su faz y, por ende, correspondía la supresión de la evidencia. Una vez excluida, la evidencia restante no establecía la culpabilidad más allá de duda razonable y que, por lo tanto, procedía la revocación de la convicción. Le asiste la razón.

Además de la narración compartida al inicio, surge del testimonio que el agente González Vargas vertió en el juicio que, para solicitar las órdenes de registro, le relató al juez los hechos que observó y plasmó en la declaración jurada. Así, con esa deposición, obtuvo la autorización para registrar la persona del peticionario, la residencia en el barrio Plata en Moca y el vehículo Honda Civic. La defensa, por su parte, le cuestionó al Agente sobre la información utilizada en la declaración jurada con relación al peticionario para obtener la expedición de las órdenes:

Lic. Padilla: - ¿Diría usted entonces que si entiendo correctamente su testimonio **usted vio un arma de fuego por 8 [o] 10 segundos sacarla del baúl del vehículo ponérsela en la cintura y [entrar] a una casa**?

Agte. González:- **Eso es así.**

Lic. Padilla:- Eso es así.

Agte. González:- **Correcto.**

Lic. Padilla:- Eso es así. ¿Y con esa, **esa es la información que usted utiliza para que el señor Juez expida una orden para tres sitios**?

Agte. González:- **Correcto.**

Lic. Padilla:- Eso es así. ¿Y **la otra información que usted tiene es la que le brinda el sargento González que dice que conoce a mi cliente**?

Agte. González:- **Correcto.**

Lic. Padilla:- Nada más.

Agte. González:- **Nada más.**

Lic. Padilla:- Nada más. De hecho que **él no le indicó a usted nada relacionado según su declaración jurada con armas de fuego de mi cliente.**

Agte. González:- **No.**

Lic. Padilla:- No. Oiga, ¿y esa orden que usted obtiene sería correcto que **lo que se quería ocupar era la pistola negra**?

Agte. González:- **Correcto.**

Lic. Padilla:- ¿Sería correcto entonces aseverar, que usted el día 18 de abril **cuando prestó la declaración jurada, usted desconocía en qué lugar en particular estaba esa arma**?

Agte. González:- **Sí desconocía.**

Lic. Padilla:- Lo desconocía. […][45]

Con relación a la investigación que el agente González Vargas realizó el 13 de abril de 2016, la declaración jurada detalló lo siguiente:

> El Miércoles, 13 DE ABRIL DE 2016, Tome (sic) servicio a las 9:00 am bajo la Supervisión del Sgto. González 8-23671, que me dirigí al pueblo de Moca para continuar la investigación relacionada con el Sr. Gustavo Salamanca Corchado, y que a eso de las 10:50 a.m. pase (sic) por la residencia antes mencionada y observe (sic) que en el área frente a la Marquesina se encontraba el Honda Civic color vino estacionado, la residencia se encontraba cerrada y había ropa de hombre tendida en un cordel en el área de la marquesina cosa que no había observado la vez anterior. Que me comunico con el Sgto. González 8-23671 y al informarle de lo observado este (sic) me indica que proceda a solicitar una orden de Registro y Allanamiento contra el Sr. Gustavo Salamanca la Residencia y su vehículo ya que poseía los motivos fundados para la misma.[46]

Por último, el agente González Vargas finaliza la declaración jurada de la siguiente manera:

---

[45] *Transcripción de la prueba oral*, Apéndice, págs. 121-123. Valga señalar que el Estado no restableció el testimonio del agente González Vargas con relación al conocimiento de la ubicación del arma.

[46] *Alegato del Peticionario*, pág. 15 y *Alegato del Pueblo de Puerto Rico*, pág. 8.

POR LO QUE CONCLUYO, que después de haber verificado la información suministrada la cual fue verificada, mediante vigilancia ocular no tengo la menor duda que Gustavo Salamanca Corchado, utiliza la residencia [ubicada en Moca] para guardar y traficar con armas de fuego en violación a la Ley de Armas de Puerto Rico.[47]

Aquí es donde cobra mayor relevancia la labor que realizó el magistrado al momento de juzgar la existencia de causa probable. Partiremos de la premisa de que, según el testimonio del agente González Vargas y evidentemente la orden, el tribunal autorizó los tres registros luego de que este le expusiera al juez la misma información plasmada en la declaración jurada.

El expediente revela con meridiana claridad que los motivos fundados que tuvo el agente González Vargas para solicitar las órdenes es que, en una ocasión y por espacio de ocho a diez segundos, observó al peticionario sacar un arma de fuego del baúl del Honda Civic (vehículo), ponérsela en la cintura (persona) y entrar a una casa (residencia). Además, creyó suficiente lo manifestado por el sargento González Collazo sobre que en el pasado intervino y arrestó al peticionario. A su vez, según lo que observó el agente González Vargas, y bajo la supervisión del sargento González Collazo en la segunda visita, se configuró el motivo fundado para solicitar las órdenes múltiples.

De un análisis del expediente, notamos que el tribunal no analizó la suficiencia de la declaración jurada desde la óptica objetiva que esencialmente caracteriza el criterio de

---

[47] *Alegato del Peticionario*, pág. 15.

probabilidad para una orden de registro, sino que descargó su responsabilidad exclusivamente en el aspecto subjetivo manifestado por el agente González Vargas en la deposición. Antes de librar las órdenes, evidentemente el tribunal no evaluó los fundamentos esbozados en la declaración jurada para determinar si tenía la suficiente base razonable para creer que era probable que el arma de fuego se encontrara en alguno de estos tres lugares. En fin, antes de autorizar las órdenes, el tribunal no observó la existencia de causa probable conforme a los criterios de probabilidad y razonabilidad que exigen los casos de registros y allanamientos.

Conforme a las particularidades del caso ante nos, las observaciones y los detalles, es decir, los motivos fundados expuestos en la declaración jurada no establecieron el *lugar en particular* **en que** *probablemente* se localizaría el arma de fuego. Mas bien, la deposición estableció la *posibilidad* de encontrar la pistola negra mediante el registro de los tres lugares. El estándar para expedir una orden de registro y allanamiento es de probabilidad, no de posibilidad.

Ciertamente, es incuestionable que, al igual que en *Flores Valentín*, el agente González Vargas, antes -y al momento- de prestar la declaración jurada el 18 de abril de 2016, desconocía en qué *lugar en particular* probablemente se hallaba la "pistola negra" que observó el 11 de abril de 2016 y que, según expuso, procuró investigar el 13 de abril de 2016. En cuanto a esta última visita descrita, el Agente

declaró la inexistencia de actividad delictiva alguna. De hecho, en esa visita, la pistola negra ni se mencionó en la deposición. Recuérdese que en esa oportunidad el agente González Vargas solo vio el Honda Civic y ropa de hombre tendida en un cordel. Declaró que le informó lo observado al sargento González Collazo y que este le ordenó que procediera con la solicitud de las órdenes de registro y allanamiento sobre la persona, el vehículo y la residencia en cuestión porque "ya poseía los motivos fundados" para la expedición.

Los hechos en *Flores Valentín* debieron constituir una alerta para que el tribunal se asegurara de que el declarante tenía la creencia razonable de la ubicación específica del arma. Sin embargo, el tribunal se limitó a transcribir la declaración jurada del funcionario público. En consecuencia, a la luz de *Camilo Meléndez*, las órdenes en el presente caso tampoco establecieron la causa probable en cuanto al lugar en particular en que se encontraba ***o pudiera encontrarse*** la pistola negra objeto de la petición de registro y allanamiento. Lo anterior constituyó una omisión de fundamentos en incumplimiento claro de las normas constitucionales y estatutarias discutidas.

Aclaramos que no estamos resolviendo que una orden de registro y allanamiento no puede contener más de un lugar si, en efecto, surge la causa probable para cada lugar que el Estado procure registrar conforme a los parámetros

constitucionales y estatutarios.[48] Naturalmente, un tribunal podrá emitir todas las órdenes de registro y allanamiento que puedan proceder en un caso, siempre y cuando se dé estricto cumplimiento a los requisitos aquí enumerados. Sin embargo, en este caso es claro que solo existía la mera sospecha (o la posibilidad) de que la pistola negra estuviera en alguno de los tres lugares y esto provocó la expedición errónea de las órdenes impugnadas. Esto es así, máxime cuando transcurrieron siete días desde que el agente observó al peticionario con la pistola negra hasta la fecha en que solicitó al tribunal las órdenes de registro y allanamiento para los tres lugares.

Finalmente, para la expedición de las órdenes, el agente González Vargas concluyó en su deposición que verificó la información suministrada y corroboró con vigilancia ocular que el peticionario utilizaba la residencia de Moca para guardar y traficar con armas de fuego. Sin embargo, la única información que emana de la declaración jurada con relación al peticionario, la suministró el sargento González Collazo

---

[48] Véanse W.R. LaFave, *Search and Seizure: A treatise on the Fourth Amendment*, 6ta ed., Minnesota, West Publishing Co., 2021, Vol. I, Secs. 4.5(c) Description of more than one place or building. Joseph G. Cook: 1 *Constitutional Rights of the Accused*; Warrants—The place or person to be searched (3d ed.)sec. 4.27. (A single warrant may authorize a search at more than one location). Véase United States v. Hillyard, 677 F.2d 1336, 1339 (9th Cir. Or. 1982) ("When property to be seized is being moved from place to place, it may be reasonable to issue warrants directed to multiple locations".);People v. Easley, 34 Cal. 3d 858, 196 Cal. Rptr. 309, 31, 671 P.2d 813(1983) ("A search warrant designating more than one person or place to be searched must contain sufficient probable cause to justify its issuance as to each person or place named therein."); State v. Jamison, 482 N.W.2d 409 (Iowa 1992); State v. Poree, 406 So. 2d 546 (La. 1981); People v. Cyr, 113 Mich. App. 213, 317 N.W.2d 857 (1982) (warrant to search 16 premises for dog fighting equipment was valid); State v. Rodriguez, 198 N.J. Super. 569, 487 A.2d 1287 (1985); State v. Ferrari, 80 N.M. 714, 460 P.2d 244 (1969). Véase además In Re: Ruben R., 2006 WL 137311, Not Officially Published, State v. Ward, 350 Md. 372 (1998).

cuando este lo identificó porque previamente había intervenido con él, pero no proveyó información sobre armas de fuego alguna. Asimismo, es imposible concluir que el agente González Vargas pudo corroborar con vigilancia ocular que el peticionario utilizaba la propiedad de Moca para guardar y traficar con armas. Esto es así porque el propio Agente afirmó que en la segunda visita no observó actividad criminal alguna y así lo testificó en juicio.

En conclusión, en los casos como el presente, la causa probable o motivo fundado consiste en la probabilidad de que exista determinado objeto incautable y que **ese objeto se encuentre en el lugar en particular que ha de ser registrado o allanado**. Por lo que, para que un magistrado libere una orden de registro y allanamiento, la causa probable debe fundamentarse en la creencia razonable de que el objeto incautable del registro probablemente se encuentre en el lugar en particular o específico que se pretende allanar. Por lo tanto, de acuerdo con el ordenamiento jurídico, la casuística y los hechos particulares de este caso, concluimos que en las dos órdenes de registro y allanamiento expedidas no había causa probable para creer que la "pistola negra" se encontraba en alguno de los tres lugares registrados.

Si estuviéramos de acuerdo con la determinación de los foros *a quo*, representaría la eliminación de la norma de probabilidad y adoptar *sub silentio* un criterio de posibilidad (o por si las moscas) para expedir órdenes de registros y allanamientos y que el Estado -so color de una

autorización que se presume "legal"- invada arbitraria y caprichosamente cualquier lugar o persona que este entienda. Lo anterior, por el solo hecho de que el Estado meramente sospeche que se halle un objeto incautable que interesa ocupar para procesar una persona. Por lo tanto, a la luz de *Camilo Meléndez* resolvemos que, debido a que las órdenes impugnadas descansaron en una declaración jurada que omitió exponer el lugar en particular donde razonable y objetivamente era probable encontrar la pistola negra, la autorización judicial resultó insuficiente de su faz. En consecuencia, la invalidez de las órdenes de registro y allanamiento activó la regla de exclusión y toda la evidencia producto del registro en la residencia ubicada en Moca admitida en el juicio será suprimida.

IV

Por los fundamentos expuestos, revocamos las sentencias de los foros *a quo*, ordenamos la supresión de la evidencia incautada ilegalmente y, ante el efecto de la ausencia de prueba más allá de duda razonable sobre uno de los elementos de los delitos por los cuales el peticionario resultó culpable, ordenamos la revocación de la convicción del peticionario.

Se dictará Sentencia de conformidad.


                                        Erick V. Kolthoff Caraballo
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.               CC-2020-168     Certiorari

Gustavo Salamanca Corchado

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2022.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos las sentencias de los foros *a quo*, ordenamos la supresión de la evidencia incautada ilegalmente y, ante el efecto de la ausencia de prueba más allá de duda razonable sobre uno de los elementos de los delitos por los cuales el peticionario resultó culpable, ordenamos la revocación de la convicción del peticionario.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Colón Pérez no intervino. La Jueza Presidenta Oronoz Rodríguez no interviene.

Bettina Zeno González
Subsecretaria del Tribunal Supremo